2013 CO 2

**The PEOPLE of the State of Colorado, Petitioner**

v.

**Jason LaROSA, Respondent.**

**No. 11SC664.**

Supreme Court of Colorado, En Banc.

Jan. 14, 2013.

Rehearing Denied Feb. 11, 2013.*

* Justice Coats and Justice Eid would grant the petition.

John W. Suthers, Attorney General, Paul Koehler, First Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Forrest W. Lewis, P.C., Forrest W. Lewis, Denver, Colorado, Attorneys for Respondent.

Chief Justice BENDER delivered the Opinion of the Court.

## I. Introduction

¶ 1 Jason LaRosa, the defendant, confessed to his wife, his mother, his pastor, a police dispatcher, and an investigating police officer

that he had sexually assaulted his two-and-a-half-year-old daughter. He was charged with various crimes, and a jury convicted him of all charges. On appeal, a division of the court of appeals reversed LaRosa's convictions under the corpus delicti rule.[1] That rule requires the prosecution to prove that a crime occurred using evidence other than a defendant's confession. The court of appeals reasoned that the prosecution had presented only opportunity evidence (other than the confessions) establishing that LaRosa had an opportunity to commit a crime, not that the crimes in fact occurred. The People appealed to this court, and we granted certiorari to address the viability of the corpus delicti rule.

¶ 2 This case requires us to decide whether to abandon our judicially created corroboration requirement, the corpus delicti rule, and with it over one hundred years of precedent. If we abandon the corpus delicti rule, then we must decide another issue: what corroboration requirement, if any, to articulate in its place. The People argue that we should abandon the corpus delicti rule in favor of the trustworthiness standard, which requires corroborating evidence that proves that a confession is reliable, or, in the alternative, the sufficiency of the evidence test, which requires no corroborating evidence. Instead, the sufficiency of the evidence test would treat confessions like any piece of evidence to be analyzed in the light most favorable to the prosecution during a motion for a judgment of acquittal.

¶ 3 We abandon the corpus delicti rule because we hold that sound reasons exist for doing so. In its place, we articulate the trustworthiness standard, which requires the prosecution to present evidence that proves that a confession is trustworthy or reliable. To determine whether corroborating evidence proves the trustworthiness or reliability of a confession, we hold that the trial court must find that corroboration exists from one or more of the following evidentiary sources:

facts that corroborate facts contained in the confession; facts that establish the crime which corroborate facts contained in the confession; or facts under which the confession was made that show that the confession is trustworthy or reliable.

¶ 4 Applying the trustworthiness standard to this case raises another issue. We must decide whether applying the trustworthiness standard here would violate LaRosa's due process right to have fair warning of any judicial decision altering a common law doctrine of criminal law. We hold that, because we have consistently applied the corpus delicti rule as a substantive principle of law for over one hundred years, LaRosa did not have fair warning of our decision to abandon it. Thus, we are constitutionally prohibited from applying the trustworthiness standard in this case.

¶ 5 Hence, we affirm the court of appeals' decision reversing LaRosa's convictions. We remand the case to that court with directions to return it to the trial court to enter a judgment of acquittal.

## II. Facts and Proceedings Below

¶ 6 While in Florida, LaRosa called an emergency dispatch operator in Douglas County and told her that he had had inappropriate sexual contact with his two-and-a-half-year-old daughter. LaRosa explained that he had already called his wife, mother, and pastor and told them the same thing. The dispatcher told LaRosa that an investigating officer would call him back. When called back, LaRosa told the investigating officer that he had taken his daughter swimming at a community recreation center and had performed oral sex on her in a private family shower while he masturbated. LaRosa told the investigating officer that he would return to Colorado and turn himself in to authorities, which he did. Upon arrival, LaRosa was arrested and charged with sexual assault on a child, sexual assault on a child by one in a position of trust, and aggravated incest.[2]

**1.** *People v. LaRosa*, No. 10CA926, 2011 WL 3505530 (Colo.App. Aug. 11, 2011) (not selected for official publication).

**2.** § 18–3–405(1), C.R.S. (2012) (sexual assault on a child); § 18–3–405.3(1), (2)(a) C.R.S. (2012)

(sexual assault on a child by one in a position of trust); § 18–6–302(1)(a), C.R.S. (2012) (aggravated incest).

¶ 7 Before trial, LaRosa filed a motion to dismiss the charges under the corpus delicti rule. He argued that his confessions to the dispatcher and the investigating officer were insufficient evidence to sustain a conviction because there was no physical evidence that a crime had occurred. There were no eyewitnesses, and his daughter could not remember the incident. The prosecution contended that it would present evidence at trial corroborating LaRosa's confessions, including medical evidence and the daughter's statements to a social worker. Ultimately, the prosecution presented neither. The trial court denied LaRosa's motion, and the case went to trial.

¶ 8 The prosecution's case depended on LaRosa's confessions to the dispatcher and the investigating officer, both of which were admitted into evidence. The dispatcher testified that she had training and experience dealing with callers who suffer from mental illness, and LaRosa had seemed "very lucid" during their conversation. The investigating officer testified that he also had experience dealing with mentally ill callers, and during his confession LaRosa had provided a coherent story, explained his motivation for confessing, described his expectations of what would happen to him, and at no point suggested "he was out of touch with reality." The prosecution's other evidence consisted of the recreation center's visitor logs, which showed that LaRosa had visited the center several times, and photographs of the family shower rooms.

¶ 9 Following the prosecution's case-in-chief, LaRosa moved for a judgment of acquittal, again based on the corpus delicti rule. LaRosa argued that the prosecution's evidence was opportunity evidence showing only that he had the opportunity to commit a crime, not that the crimes occurred. The trial court denied LaRosa's motion.

¶ 10 The trial continued, and LaRosa testified that, when he confessed, he was suffering from marital and financial problems, was "extremely tired," and had confessed to ficti-

tious events. The jury convicted him of all charges.

¶ 11 On appeal, a division of the court of appeals reversed LaRosa's convictions based on the corpus delicti rule. That court reasoned that the prosecution had not presented evidence other than his confessions to establish that the crimes occurred. Rather, the prosecution's evidence established that LaRosa had an opportunity to sexually assault his child, "which every custodial parent has on a virtually continuing basis." The court of appeals therefore reversed LaRosa's convictions and directed the trial court to enter a judgment of acquittal. The People appealed to this court, and we granted certiorari to examine the viability of the corpus delicti rule in Colorado.[3]

### III. Applicable Law

¶ 12 Before addressing the parties' contentions, we provide an overview of the applicable law. Specifically, we discuss the judicially created corroboration requirement and its two formulations at issue here, the corpus delicti rule and the trustworthiness standard.

¶ 13 Almost all courts adhere to a corroboration requirement, which requires the prosecution to present corroborating evidence of a defendant's confession to either allow for its admission into evidence or sustain a conviction. Kenneth S. Broun, *McCormick on Evidence* § 145, at 592–93 (6th ed. 2006). We adhere to the conventional formulation of the corroboration requirement, the corpus delicti rule. *See Downey v. People,* 121 Colo. 307, 319, 215 P.2d 892, 898 (1950). Federal courts and a growing number of state jurisdictions adhere to a newer formulation of the corroboration requirement, the trustworthiness standard. *See State v. Mauchley,* 2003 UT 10, ¶ 19, 67 P.3d 477, 482–83.

### *The Corpus Delicti Rule*

■ ¶ 14 To establish guilt in a criminal case, the prosecution must prove the corpus delicti, or "body of the crime." This means

---

**3.** We granted certiorari review of the following issue:

 1. Whether the court of appeals erred when it reversed a conviction based on the corpus

delicti doctrine, which prevents convicting a defendant based on his uncorroborated confession alone.

that the prosecution must prove that the crime occurred.[4]

¶ 15 From this corpus delicti concept, we have derived the corpus delicti rule. That rule requires the prosecution to present evidence other than a defendant's confession that proves that the crime occurred. *Downey*, 121 Colo. at 320, 215 P.2d at 899. Without corroborating evidence, a defendant's confession is insufficient evidence to sustain a conviction. *Roberts v. People*, 11 Colo. 213, 216, 17 P. 637, 639 (1888). The corroborating evidence "need only be slight," but it must be sufficient "to convince the jury that the crime is real and not imaginary." *Neighbors v. People*, 168 Colo. 319, 322, 451 P.2d 264, 265 (1969).

¶ 16 The People state, and our independent research confirms, that the earliest reported case applying the corpus delicti rule in Colorado is from 1872. *See Dougherty v. People*, 1 Colo. 514, 524 (1872). Since then, we have consistently applied this rule. *See People v. Rankin*, 191 Colo. 508, 510, 554 P.2d 1107, 1108 (1976); *People v. Smith*, 182 Colo. 31, 33, 510 P.2d 893, 894 (1973); *Meredith v. People*, 152 Colo. 69, 71, 380 P.2d 227, 227–28 (1963).

¶ 17 There seems to be little consensus concerning the rationale behind the rule, but courts typically rely on some amalgam of the following: protecting defendants from conviction based on confessions to imaginary crimes; avoiding reliance on coerced confessions extracted under police pressure; and promoting better police investigations by ensuring that they "extend beyond the words of the accused." *Smith v. United States*, 348

U.S. 147, 153, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *People v. McMahan*, 451 Mich. 543, 548 N.W.2d 199, 204 (1996) (Boyle, J., dissenting); *see also McCormick on Evidence* § 145, at 595–96. The rule's objective is "relatively modest": to reduce the possibility that a person is convicted based on a confession to a crime that never happened. *McCormick on Evidence* § 145, at 595; *see also People v. Jones*, 17 Cal.4th 279, 70 Cal. Rptr.2d 793, 949 P.2d 890, 902–03 (1998).

¶ 18 Due in part to its "extremely limited function," *Smith*, 348 U.S. at 153, 75 S.Ct. 194, the rule has been subject to widespread criticism.[5] This criticism has led federal courts and a growing number of state jurisdictions to abandon the corpus delicti rule in favor of the trustworthiness standard.

### The Trustworthiness Standard

¶ 19 The trustworthiness standard derives from three United States Supreme Court cases announced the same day in 1954. *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *United States v. Calderon*, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954).

¶ 20 In *Opper*, the Court rejected the corpus delicti rule and adopted, without extensive explanation, the "better rule" that "corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti." *Opper*, 348 U.S. at 93, 75 S.Ct. 158. Instead, the prosecution must "introduce substantial independent evidence which would tend to establish the trustwor-

---

4. Cases and criminal law treatises abound with technical descriptions of the corpus delicti. *See, e.g., Lowe v. People*, 76 Colo. 603, 611, 234 P. 169, 173 (1925) (stating that the corpus delicti consists of two components, an injury and unlawful conduct causing that injury); Wayne R. LaFave, *Substantive Criminal Law* § 1.4(b), at 29 (2d ed. 2003) (same); Charles E. Torcia, *Wharton's Criminal Law* § 28, at 172–73 (15th ed. 1993) (same). These technical descriptions comport with our simplified description above. *See Hampton v. People*, 146 Colo. 570, 574, 362 P.2d 864, 866 (1961); *People in Interest of T.A.O.*, 36 P.3d 180, 181 (Colo.App.2001).

5. *See, e.g.*, Thomas A. Mullen, *Rule Without Reason: Requiring Independent Proof of the Corpus*

*Delicti as a Condition of Admitting an Extrajudicial Confession*, 27 U.S.F. L. Rev. 385, 385 (1993) (arguing that the rule has "dwindling vitality" and is supported by little else but "judicial inertia"); Maria Lisa Crisera, Comment, *Reevaluation of the California Corpus Delicti Rule: A Response to the Invitation of Proposition 8*, 78 Calif. L. Rev. 1571, 1573–74 (1990) (arguing that the corpus delicti rule is impractical and unnecessary). In *People v. Robson*, 80 P.3d 912, 914 (Colo.App.2003), a division of the court of appeals, citing these authorities, noted that they presented "sound arguments" for abolishing the corpus delicti rule but stated that it was bound to apply our corpus delicti precedent.

thiness of the statement." *Id. Smith* elaborated on the quantum of evidence necessary to establish the trustworthiness of a confession, noting that "[a]ll elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." *Smith*, 348 U.S. at 156, 75 S.Ct. 194.

 ¶ 21 What these cryptic pronouncements mean is unclear. Not surprisingly, federal courts have struggled to interpret *Opper* and *Smith*'s trustworthiness standard consistently. What is clear is that the trustworthiness standard is different in its focus than the corpus delicti rule. It focuses on whether corroborating evidence establishes the trustworthiness or reliability of the confession, whereas the corpus delicti rule focuses on whether corroborating evidence establishes that the crime occurred. *See United States v. Johnson*, 589 F.2d 716, 718–19 (D.C.Cir.1978).

### IV. Analysis

¶ 22 Having outlined the applicable law, we now turn to the parties' contentions. LaRosa contends, and the court of appeals agreed, that this case involves opportunity evidence that does not corroborate his confessions under the corpus delicti rule, which has been a substantive principle of this court's precedent for more than a century. On that basis, he urges us to affirm the court of appeals. The People argue that we should abandon the corpus delicti rule because it does not serve the purposes justifying its original existence. LaRosa counters that we should retain the corpus delicti rule because it still operates to protect defendants from the consequences of false confessions and because stare decisis compels us to. If we abandon the corpus delicti rule, the People argue that we should do so in favor of the trustworthiness standard, or, in the alternative, the sufficiency of the evidence test. Under either alternative, the People urge us to reverse the court of appeals and reinstate LaRosa's convictions.

¶ 23 To analyze the parties' contentions, we first examine the corpus delicti rule and its criticisms, consider whether we can abandon the corpus delicti rule in light of stare decisis principles, and conclude that we can. We next discuss the People's alternative arguments in favor of the trustworthiness standard and the sufficiency of the evidence test and conclude that the trustworthiness standard is the better rule because it provides defendants with some minimal protection from convictions based on false confessions. We then turn to articulating the trustworthiness standard, conclude it is confusing, and articulate our own version.

### A.

¶ 24 The People contend that we should abandon the corpus delicti rule and with it over one hundred years of precedent, despite the doctrine of stare decisis. In support, the People refer us to the rising tide of criticism directed at the rule.

¶ 25 The rule has been criticized for inadequately serving its admittedly "limited function." *See Smith*, 348 U.S. at 153, 75 S.Ct. 194. It exists to detect false confessions but does so in only one circumstance: when a person confesses to an imaginary crime. It does nothing to protect a person who confesses to a crime committed by someone else. *See Mauchley*, ¶ 22, 67 P.3d at 483. Courts have questioned the logic of that distinction. *See id.; State v. Lucas*, 30 N.J. 37, 152 A.2d 50, 60 (1959) (stating that "[t]here seems to be little difference in kind between convicting the innocent where no crime has been committed and convicting the innocent where a crime has been committed, but not by the accused").

¶ 26 The rule has also been criticized as outdated. Since its inception, the United States Supreme Court has recognized additional constitutional and procedural safeguards concerning the voluntariness of confessions that have led some courts to question whether the rule is obsolete. *See State v. Parker*, 315 N.C. 222, 337 S.E.2d 487, 494 (1985) (noting that the rule's concern with coercive police tactics in obtaining confessions has been undercut by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Additionally,

since courts first began applying the corpus delicti rule, criminal statutes have become more numerous and complex, making the corpus delicti difficult, if not impossible, to define for certain crimes. *See Mauchley,* ¶ 31, 67 P.3d at 485 n. 4.

¶ 27 Finally, the rule has been criticized for its potential to obstruct justice in cases where, as here, the victim is too young to testify and no tangible injury results from the alleged criminal act. *See State v. Ray,* 130 Wash.2d 673, 926 P.2d 904, 905, 907 (1996) (applying the corpus delicti rule to reverse the conviction of a defendant who confessed to forcing his three-year-old daughter to fondle his penis). In such situations, the rule may operate to reward defendants who target young or mentally infirm victims who are unable to testify and commit crimes that do not result in tangible injuries or do so carefully and leave no evidence. *See McMahan,* 548 N.W.2d at 207 (Boyle, J., dissenting) (criticizing the rule for creating this "socially aberrant result"). That the rule may operate to bar conviction for crimes committed against the most vulnerable victims, such as infants, young children, and the mentally infirm, and for crimes that are especially egregious, such as sexual assault and infanticide, has been described as "especially troublesome." *See Mauchley,* ¶ 29, 67 P.3d at 485; *see also* Maria Lisa Crisera, Comment, *Reevaluation of the California Corpus Delicti Rule: A Response to the Invitation of Proposition 8,* 78 Calif. L. Rev. 1571, 1583 (1990) (discussing the rule's potential to obstruct justice in cases involving child abuse and infanticide because it can be difficult, if not impossible, to establish that such injuries resulted from criminal acts).

¶ 28 With these criticisms in mind, we must analyze whether to abandon the corpus delicti rule in light of stare decisis. Stare decisis is a judge-made doctrine that promotes uniformity, certainty, and stability of the law. *Friedland v. Travelers Indem. Co.,* 105 P.3d 639, 644 (Colo.2005). It requires a court to follow the rule of law it has established in earlier cases unless "sound reasons exist." *People v. Blehm,* 983 P.2d 779, 789 (Colo.1999). Stare decisis is not an inflexible or immutable rule, but it requires us to apply precedent (here, the corpus delicti rule) unless we are convinced that it was originally erroneous or is no longer sound due to changed conditions, and more good than harm will come from departing from it. *See Friedland,* 105 P.3d at 644; *Blehm,* 983 P.2d at 788.

¶ 29 Determining whether the rule was originally erroneous requires us to examine if the rule accomplishes its purpose of protecting defendants from false confessions. As noted, the corpus delicti rule seeks to accomplish this purpose by requiring the prosecution to prove the corpus delicti with evidence other than a defendant's confession. By focusing on the corpus delicti, however, the rule draws an untenable distinction between defendants who confess to imaginary crimes and those who confess to crimes committed by others. Because the rule operates to protect defendants in only one specific circumstance, when a defendant confesses to an imaginary crime, it fails to comport with its purpose of detecting false confessions. This incongruity has existed since the rule's inception by virtue of its inherently flawed design. Thus, we conclude that the corpus delicti rule was originally erroneous. *See Mauchley,* ¶¶ 27, 46, 67 P.3d at 484, 488.

¶ 30 In the alternative, we may also consider whether the rule is no longer sound due to changed conditions. As noted, *Miranda* and similar constitutional doctrines now exist to protect defendants from the overzealous interrogation techniques of police officers. Thus, insofar as one of its original purposes was to protect defendants from coercive police tactics, the rule is no longer necessary. Further, the rule has become difficult, if not impossible, to apply to certain crimes, in part because statutory crimes have proliferated and become more complex. *See People v. Trujillo,* 860 P.2d 542, 545 (Colo. App.1992) (noting that no tangible injury can be isolated as the corpus delicti for inchoate crimes such as conspiracy, attempt, or solicitation). Finally, our cases have stressed the insubstantial quantum of proof necessary to establish the corpus delicti, rendering its value as a corroboration requirement suspect. *See Hampton,* 146 Colo. at 574, 362 P.2d at 866 (stating that the corroborating evidence

"need be only slight"). Given these legal developments, we conclude that the rule is no longer sound.

¶ 31 Last, we must determine whether abandoning the rule will do more good than harm. We are troubled that the rule works to bar convictions in cases involving the most vulnerable victims, such as infants, young children, and the mentally infirm. We are also aware that the rule operates disproportionately in cases where no tangible injury results, such as in cases involving inappropriate sexual contact, or where criminal agency is difficult or impossible to prove, such as in cases involving infanticide or child abuse. Indeed, in Colorado, LaRosa's case is not the first of its type in which the rule has been invoked to bar conviction for sexual assault against a young child. See Meredith, 152 Colo. at 72, 380 P.2d at 228 (applying corpus delicti rule to reverse the conviction of a defendant who confessed to molesting a five-year-old boy); Robson, 80 P.3d at 913–14 (applying corpus delicti rule to affirm the trial court's dismissal of charges against a defendant who confessed to sexually assaulting his infant daughter). Because the rule may operate to obstruct justice, we conclude that abandoning it will do more good than harm. We are convinced that the corpus delicti rule is too rigid in its approach, too narrow in its application, and too capable of working injustice in cases where, as here, evidence of the corpus delicti is not only nonexistent but impossible to uncover. See Parker, 337 S.E.2d at 494; Mauchley, ¶ 46, 67 P.3d at 488. Thus, we abandon the corpus delicti rule because we hold that sound reasons exist for doing so.

### B.

¶ 32 Having agreed with the People that we should abandon the corpus delicti rule, we next address what corroboration requirement, if any, we should articulate in its place. On this issue, the People present alternative arguments. The People argue in favor of the trustworthiness standard because it better accomplishes the purpose that the corpus delicti rule is meant to serve. In the alternative, the People argue that any corroboration requirement, including the trustworthiness standard, conflicts with the sufficiency of the evidence test announced in People v. Bennett, 183 Colo. 125, 515 P.2d 466 (1973), because it treats confessions as inherently unreliable and prohibits the trial court from considering confessions in the light most favorable to the prosecution. As such, the People argue that we should abandon any corroboration requirement and analyze confessions under the sufficiency of the evidence test articulated in Bennett.

¶ 33 There is support for the People's contention that Bennett conflicts with the corroboration requirement. Bennett requires a court, when ruling on a motion for a judgment of acquittal, to analyze the evidence in the light most favorable to the prosecution and determine whether it is "substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." Bennett, 183 Colo. at 130, 515 P.2d at 469. A corroboration requirement, by contrast, would require a reviewing court to invalidate a conviction that satisfies Bennett if it rested solely on an uncorroborated confession. See United States v. Brown, 617 F.3d 857, 862 (6th Cir.2010). The People's contention highlights the substantive and procedural overlap between the sufficiency of the evidence test and the corroboration requirement, but they are not in irreconcilable conflict.

¶ 34 For one, they serve different purposes. The sufficiency of the evidence test is constitutionally mandated to ensure that the prosecution proves every element of an offense beyond a reasonable doubt. People v. Gonzales, 666 P.2d 123, 127 (Colo. 1983). By contrast, the corroboration requirement is not constitutionally mandated but requires the prosecution to present corroborating evidence of a defendant's confession to assuage our long-standing concern about false confessions.

¶ 35 Further, both doctrines are satisfied by different evidentiary requirements. The sufficiency of the evidence test is an elemental test. Its focus is on the "substantive elements of the criminal offense." Jackson v. Virginia, 443 U.S. 307,

324 n. 16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It requires the court to consider whether a reasonable mind could conclude that "each material element of the offense was proven beyond a reasonable doubt." *Bennett*, 183 Colo. at 132, 515 P.2d at 470; *see also Gonzales*, 666 P.2d at 128 (applying the *Bennett* test to the specific statutory elements of possession of contraband). By contrast, the corroboration requirement is not an elemental test because it does not require the court to review the evidence as it relates to the specific elements of the crime. Instead, it focuses on whether the prosecution presented evidence to corroborate a confession.

¶ 36 These differences are best illustrated by considering the facts of this case. LaRosa's confessions, when viewed in the light most favorable to the prosecution, would invariably support a conclusion by a reasonable person of guilt beyond a reasonable doubt. This is so because, by definition, a "confession" is an admission of guilt. Any confession would therefore meet *Bennett*'s sufficiency of the evidence test, irrespective of its reliability. As such, a corroboration requirement may require the prosecution to present additional and different evidence than that required under *Bennett* if it seeks to rely on a defendant's confession to secure a conviction. Although similar, the sufficiency of the

evidence test and the corroboration requirement are not in irreconcilable conflict. Thus, *Bennett* does not prohibit us from articulating a different corroboration requirement if necessary to protect defendants from false confessions.

¶ 37 Without engaging in an empirical battle over the frequency with which false confessions occur, we recognize that some defendants on occasion do confess to nonexistent crimes or crimes committed by others.[6] Despite its "extremely limited function," *Smith*, 348 U.S. at 153, 75 S.Ct. 194, the corroboration requirement thus serves a valid purpose: to prevent "errors in convictions based upon untrue confessions alone," *Warszower v. United States*, 312 U.S. 342, 347, 61 S.Ct. 603, 85 L.Ed. 876 (1941). This problem, though possibly overstated in the caselaw, is compounded by the fact that confessions "stand high in the probative hierarchy of proof." *See Lucas*, 152 A.2d at 61; *see also* Stephen A. Saltzburg, *Standards of Proof and Preliminary Questions of Fact*, 27 Stan. L. Rev. 271, 293 (1975). Given the persuasive power a confession may hold over a jury, courts have imposed safeguards, including various corroboration requirements, to restrict the jury's power to convict on the basis of a confession alone.[7] To this end, we

6. As an example, consider the Central Park jogger case. In that case, five teenagers were accused of assaulting and raping a female jogger in New York City's Central Park. They all falsely confessed, despite several having been accompanied by adult family members during the interrogations, despite there being no evidence of physical police coercion, and despite having no apparent motive for doing so. A jury convicted them based on their confessions. Their convictions were eventually vacated when a serial rapist and murderer confessed to the crimes, and DNA evidence corroborated his confession. Sharon L. Davies, *The Reality of False Confessions—Lessons of the Central Park Jogger Case*, N.Y.U. Rev. L. & Soc. Change, 218–19 (2006); *see also The Central Park Five* (IFC Films 2012).

Moreover, there are numerous cases containing statements regarding the frequency with which defendants falsely confess. *See Smith*, 348 U.S. at 153, 75 S.Ct. 194 ("[T]he experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made."); *Brown*, 617 F.3d at 861 ("False confessions ... have not disappeared, and they provide a modern justification for continuing to

respect the [trustworthiness standard]."); *United States v. Singleterry*, 29 F.3d 733, 737 n. 4 (1st Cir.1994) (noting that courts are "wary of individuals who, as a result of mental illness, a fit of passion, a misplaced sense of sacrifice, or sheer mendacity, falsely incriminate themselves in order to spare another"); *Mauchley*, ¶ 21, 67 P.3d at 483 (stating that "[i]t is beyond dispute" that some defendants falsely confess). *But see* 7 *Wigmore on Evidence* § 2070, at 510 (Chadbourn rev. 1978) (characterizing false confessions as "exceedingly rare").

7. *See Smith*, 348 U.S. at 153, 75 S.Ct. 194 (noting that the "average juror" has little experience with the circumstances under which confessions are extracted, which in turn "justif[ies] a restriction on the power of the jury to convict"); *United States v. Bryce*, 208 F.3d 346, 354 (2d Cir.1999) ("Jurors find [confessions] inherently powerful, however, and may vote to convict based upon such statements alone."); *Singleterry*, 29 F.3d at 737 (noting that "there is a danger that the jury will rush to credit a confession without seriously considering whether the defendant confessed to a crime he did not commit").

are persuaded that some corroboration requirement is necessary to protect defendants from false confessions.

¶ 38 As our analysis has shown, the corpus delicti rule inadequately addresses that problem by focusing on the corpus delicti rather than on the confession itself. The trustworthiness standard is more effective than the corpus delicti rule because its focus comports with its purpose: it seeks to detect false confessions by focusing on whether a confession is true or false. The trustworthiness standard also responds to the criticisms of the corpus delicti rule. It is easier to apply to complex or inchoate crimes because the corpus delicti does not have to be defined, and it is less likely to work injustice in cases where no evidence of the corpus delicti exists. *See Opper*, 348 U.S. at 93, 75 S.Ct. 158; *McCormick on Evidence* § 148, at 605. Finally, the trustworthiness standard is not duplicative of *Miranda* and similar constitutional safeguards because it protects defendants from false confessions, not involuntary ones.[8] Thus, because the trustworthiness standard better accomplishes the objectives the corpus delicti rule seeks to accomplish, we abandon the corpus delicti rule in favor of the trustworthiness standard.

> This rationale is not novel. Our rules of evidence reflect, in part, a fear that juries will put too much stock in certain types of evidence and come to unwarranted conclusions. *See, e.g.,* CRE 404(b) (excluding character evidence to prove propensity); CRE 407 (excluding evidence of subsequent remedial measures); CRE 409 (excluding evidence of payments of medical and similar expenses); CRE 410 (excluding evidence of plea bargaining).

8. As such, *Miranda* and the corroboration requirement serve different ends. The protections of *Miranda* apply only when a sect is subjected to custodial interrogation, and it rests on the constitutional principle that a waiver of a constitutional right must be voluntary. *See People v. Humphrey*, 132 P.3d 352, 356 (Colo.2006). In contrast, any corroboration requirement, including the corpus delicti rule, is concerned with whether evidence exists that corroborates a confession. This concern has little to do with whether a confession is voluntary and, as can be illustrated by the facts of this case, applies irrespective of whether a person is in custody. *See United States v. Dalhouse*, 534 F.3d 803, 806 (7th Cir.2008) (noting that *Miranda* seeks to protect defendants from coercive police tactics, whereas the trustworthiness standard seeks to protect defendants from false confessions given voluntari-

## C.

¶ 39 We now turn to articulating that standard. Although easy to repeat in principle, "[t]he doctrinal nature and procedural concomitants of the trustworthiness requirement announced in *Opper* are not entirely clear." *Singleterry*, 29 F.3d at 737. Courts have not interpreted *Opper* and *Smith* consistently, resulting in different approaches to the trustworthiness standard that can be confusing, complicated, or at odds with the flexibility that is one of its hallmarks.[9] Our task, then, is to articulate a standard that is both comprehensible and capable of consistent application.

¶ 40 Under the trustworthiness standard, the prosecution is not required to present evidence other than a defendant's confession to establish the corpus delicti. Rather, the prosecution must present evidence that proves the trustworthiness or reliability of a confession. *See Opper*, 348 U.S. at 93, 75 S.Ct. 158. The evidence is sufficient if the corroborating evidence "supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Id.* "[T]he corroborating facts may be of *any sort what-*

ly); *McMahan*, 548 N.W.2d at 206 (Boyle, J., dissenting). *But see Brown*, 617 F.3d at 861 (questioning whether the trustworthiness standard should be treated as a "quaint, though now irrelevant, reminder of the Court's pre-*Miranda* days"); *United States v. Dickerson*, 163 F.3d 639, 641 n. 2 (D.C.Cir.1999) ("[P]ost–*Miranda*, the need for the rule, especially insofar as it protects against involuntary confessions, is even more questionable.").

9. *See, e.g., Brown*, 617 F.3d at 863 (explaining that, under *Smith*, if "a defendant admits that he drove a car that had an illegal sawed-off shotgun in its trunk, it is sufficient for the independent corroborating evidence to show that he drove that particular car"); *Bryce*, 208 F.3d at 355 (dividing trustworthiness issues "into two categories" depending on whether a confession is inherently reliable so as to be "self-corroborating"); *United States v. Lopez–Alvarez*, 970 F.2d 583, 591–92 (9th Cir.1992) (announcing a "two-pronged" corroboration requirement that includes a "modern corpus delicti rule" and requires the prosecution to present evidence that the "criminal conduct at the core of the offense has occurred").

*ever,* provided only that they tend to produce a confidence in the truth of the confession." *Wigmore on Evidence* § 2071, at 511 (emphasis in original).

¶ 41 To determine whether corroborating evidence proves the trustworthiness or reliability of a confession, we hold that the trial court must find that corroboration exists from one or more of the following evidentiary sources: facts that corroborate facts contained in the confession; facts that establish the crime which corroborate facts contained in the confession; or facts under which the confession was made that show that the confession is trustworthy or reliable.

¶ 42 A related but different issue arises as to when the trial court should make this determination. There is confusion in the caselaw as to whether the trustworthiness standard is a rule affecting the admissibility of evidence or the sufficiency of the evidence.[10] We think the better approach is to treat the trustworthiness standard, at least for procedural purposes, like a rule affecting the sufficiency of the evidence to be analyzed by the court following a motion for a judgment of acquittal. This approach is consistent with the United States Supreme Court's treatment of the trustworthiness standard[11] and our treatment of our previous corroboration requirement, the corpus delicti rule. *See Robson,* 80 P.3d at 913–14 (noting that we have consistently "treated the [corpus delicti rule] as a substantive rule of law relating to the quantum of proof necessary to sustain a conviction" and not a rule affecting admissibility). As a practical matter, this procedure also makes sense because the trial court will be better equipped to evaluate the evidence and make its determination after the prosecution has presented its case.

### V. Application

¶ 43 Having outlined the trustworthiness standard, we would ordinarily apply it to this case. LaRosa contends, however, that applying the trustworthiness standard here would violate the constitutional prohibition against ex post facto laws. The People counter that the Ex Post Facto Clause applies to legislative acts, not judicial decision making. As such, the People argue that LaRosa's contention should be analyzed under the Due Process Clause and rejected because he had "fair warning" of our decision to abandon the corpus delicti rule.

¶ 44 The parties' contentions reflect confusion about whether the United States Supreme Court's Ex Post Facto Clause jurisprudence applies to judicial decision making. In *Rogers v. Tennessee,* 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001), the Supreme Court held that it does not. The Court held that judicial ex post facto claims must be analyzed under the Due Process Clause and "in accordance with the more basic and general principle of fair warning." *Id.* at 452, 121 S.Ct. 1693. The principle of fair warning is violated when a "judicial alteration of a common law doctrine of criminal law" was "unexpected and indefensible." *Id.* at 462, 121 S.Ct. 1693 (quoting *Bouie v. City of Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)). Before *Rogers* was decided, we similarly held that the "key test in determining whether the due process clause precludes the retrospective application of a judicial decision in a criminal case is whether the decision was sufficiently foreseeable so that the defendant had fair warning." *Aue v. Diesslin,* 798 P.2d 436, 441 (Colo. 1990). Accordingly, we analyze LaRosa's

10. *Compare Brown,* 617 F.3d at 860 (noting that "corroboration goes to sufficiency"), *and Dalhouse,* 534 F.3d at 806 (stating that the trustworthiness standard "does not affect the *admissibility* of a confession, at least not in this circuit") (emphasis in original), *with Landsdown v. United States,* 348 F.2d 405, 409 (5th Cir.1965) (requiring corroboration before the confession can be "admi[tted] into evidence against the accused"), and *Mauchley,* ¶¶ 58–60, 67 P.3d at 490 (treating the trustworthiness standard as a rule governing the admissibility of confessions); *see also McCormick on Evidence* § 145, at 593 ("Probably all versions of [the corroboration requirement] im-

pose a limit on the evidence that will support a criminal conviction. Some versions at least purport to limit admissibility of such statements.").

11. In *Opper,* although the Court likened a confession to hearsay, it also noted that the statement, without corroboration, was "competent" evidence, *see Opper,* 348 U.S. at 90, 75 S.Ct. 158, and, in *Smith* and *Calderon,* the Court assumed that the statements, without corroboration, were admissible, *see Smith,* 348 U.S. at 155, 75 S.Ct. 194; *Calderon,* 348 U.S. at 161, 75 S.Ct. 186.

contention under the Due Process Clause and its guarantee of fair warning.

¶ 45 Because *Rogers* involved similar facts, it provides guidance for our analysis. In *Rogers,* the Court considered whether retroactive application of the Tennessee Supreme Court's decision abolishing the common law "year and a day rule" violated the Due Process Clause. *Rogers,* 532 U.S. at 453, 121 S.Ct. 1693. The Court concluded that it did not because the rule was "widely viewed as an outdated relic of the common law" dating back to the thirteenth century. *Id.* at 462, 121 S.Ct. 1693. Perhaps most importantly, the Court described the paucity of Tennessee caselaw applying the rule, noting that it had never served as a ground of decision in any homicide prosecution in the state and had only been mentioned in three cases, each time in dicta. *Id.* at 464, 121 S.Ct. 1693. Although the rule was a "substantive principle" of Tennessee law, the Court characterized it as "a principle in name only" because it had never been enforced. *Id.* at 466, 121 S.Ct. 1693. The Court therefore concluded that the Tennessee Supreme Court's decision was a routine exercise in common law decision making so that applying its decision retroactively did not violate due process. *Id.* at 467, 121 S.Ct. 1693.

¶ 46 The corpus delicti rule, although widely criticized, is still followed in many state jurisdictions. Indeed, several state courts have reaffirmed it, presumably rejecting similar arguments to those we have found persuasive here. *See McMahan,* 548 N.W.2d at 201; *Ray,* 926 P.2d at 906. Further, unlike the "year and a day rule" in *Rogers,* we have applied the corpus delicti rule as a substantive principle of Colorado law for over one hundred years. *See Smith,* 182 Colo. at 34, 510 P.2d at 895. The rule has been regularly invoked to bar convictions, occasionally in cases similar to this one. *See Robson,* 80 P.3d at 914. Thus, we conclude that LaRosa did not have "fair warning" of our decision to abandon the corpus delicti rule in favor of the trustworthiness standard. Because LaRosa did not have fair warning of our decision, we hold that applying the trustworthiness standard here would violate his due process rights.

¶ 47 Hence, because we are constitutionally prohibited from applying the trustworthiness standard here, and because the People concede that the evidence is insufficient to sustain LaRosa's convictions under the corpus delicti rule, we affirm the court of appeals' decision reversing LaRosa's convictions.

## VI. Conclusion

¶ 48 For the reasons stated, we affirm the court of appeals and remand the case to that court with directions to return it to the trial court to enter a judgment of acquittal.

Justice COATS dissents, and Justice EID joins in the dissent.

Justice COATS, dissenting.

¶ 49 While I agree that a failure to independently prove the commission of the defendant's crimes affects neither the admissibility nor the sufficiency of his confession, I consider that proposition to have been effectively settled decades ago. And unlike the majority, I would not now, under the guise of relaxing an even more burdensome restriction, create a wholly new exception to our well-established substantial evidence standard for court-ordered judgments of acquittal. Because I believe the jury in this case was presented, under existing law, sufficient evidence to find all of the elements of the defendant's offenses beyond a reasonable doubt, I would reverse the judgment of the court of appeals and order reinstatement of all of the defendant's sexual-assault-on-a-child related convictions. I therefore respectfully dissent.

¶ 50 Apart from our disagreement over the propriety of a new court-made confession rule (dictated neither by constitution, statute, nor existing rules of evidence or procedure) for any purpose, much less "to assuage our long-standing concern about false confessions," maj. op. at 575, I question the majority's treatment of the scope and history of the common-law rule in the first place. Prior to the enactment of our Criminal and Criminal Procedure Codes, which expressly abolish common-law crimes and defenses, *see Oram v. People,* 255 P.3d 1032, 1036 (Colo.2011); the Colorado Rules of Evidence (effective Jan. 1, 1980), which expressly define hearsay to exclude the out-of-court statements of criminal defendants; and a host of constitutional developments concerning the use of

confessions and the sufficiency of evidence, we, much like the federal courts, had acknowledged the existence of a common-law rule requiring proof of a crime by evidence separate and apart from a confession; however, neither we nor the United States Supreme Court had attempted a comprehensive exegesis of the scope and applicability of this common-law rule, or the extent to which corroboration was required by it, before the middle of the last century. Rather than rejecting and replacing this common-law corroboration requirement, maj. op. at 572–73, the Supreme Court, in a group of tax cases reported in seriatim in 1954, resolved various disputes among the lower federal courts by finding for the first time that the rule applied even to crimes having no tangible corpus delicti and even to subsequent statements of defendants not even purporting to be inculpatory, much less qualifying as confessions. *Smith v. United States,* 348 U.S. 147, 156, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *see also Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). Integral to this expansive ruling on applicability, however, the Court simultaneously found, with regard to "the quantum of corroboration necessary to substantiate the existence of the crime charged," that "one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." *Smith,* 348 U.S. at 156, 75 S.Ct. 194.

¶ 51 What the majority describes as the "trustworthiness standard" was therefore not a new restriction on the effect of confessions at all, but rather the Court's definitive interpretation of the common-law rule, for the federal courts. As a number of federal courts have since recognized, subsequent developments in the constitutional jurisprudence of the Supreme Court, particularly those related to confessions and the sufficiency of evidence to satisfy due process requirements, raise at the very least serious questions whether the Court's pronouncements of the mid–1950's retain any vitality today. *See, e.g., United States v. Brown,* 617 F.3d 857 (6th Cir.2010). While lower courts are bound not only by the results of the Supreme Court's opinions but also by those portions of its opinions necessary to those results, *see*

*Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 63, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), it nevertheless remains the prerogative of the Supreme Court alone to overrule one of its precedents, which must therefore continue to be followed, even if they have been significantly undermined by subsequent changes in judicial doctrine, *see State Oil Co. v. Khan,* 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997); *see also United States v. Hatter,* 532 U.S. 557, 567, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001). In the absence of some more express statement by the Supreme Court overruling these ancient pronouncements, the federal courts appear to consider themselves obligated to continue to follow them. *See, e.g., Brown,* 617 F.3d at 862.

¶ 52 Unlike inferior federal tribunals, however, whether or not these precedents have merely been undermined rather than overruled by necessary implication, this court has no similar obligation to follow them. Because there is no suggestion that these precedents are based on constitutional provisions applicable to the states, we find ourselves positioned relative to the lower courts of this state precisely the same as the United States Supreme Court relative to the federal courts. That being the case, I would now make clear (as I believe the Supreme Court will do when faced squarely with the question in the federal context) that even if it were considered appropriate to judicially impose new, nonconstitutional limitations on the role of juries in criminal cases, the majority's policy concerns about confessions have long-since been "assuage[d]" by other, more directed constitutional developments and statutory limitations; that the new "trustworthiness standard" it creates is a prime example of the "open-ended balancing tests" exhaustively disparaged and ultimately rejected as constitutionally inadequate by the Supreme Court in *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); and that any special exception for confessions flies in the face of both the express language of our substantial evidence standard and this jurisdiction's evolving views of the greater independence of juries in both civil and criminal cases. *See Frasco v. People,* 165 P.3d 701, 704 (Colo.2007).

¶ 53 With regard to the substantial evidence standard in particular, nearly four dec-

ades ago this court rejected any artificial distinction between the effect of direct and circumstantial evidence in establishing a prima facie case and articulated our current substantial evidence test, reserving for jury resolution any charge in which "the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Bennett,* 183 Colo. 125, 131, 515 P.2d 466, 469 (1973); *see also Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (recounting the history of the similar federal standard); *Clark v. People,* 232 P.3d 1287 (Colo.2010) (rejecting any requirement that in order to make a prima facie case the prosecution must exclude alternative explanations for the presence of defendant's semen). The clear thrust of our decision in *Bennett* was to reject the designation of any particular class of admissible evidence as insubstantial or insufficient on its face, requiring instead that the court determine sufficiency in each case based on the evidence as a whole. We certainly did not reserve a special rule for confessions. Whether the "corpus delicti rule" was implicitly overruled or merely substantially undermined by the court's rationale and the specific language with which it expressed itself in *Bennett,* in light of that holding and its nearly forty years of subsequent constructions, ever reserving credibility determinations to the jury, it cannot seriously be argued that a failure to apply the corpus delicti rule in this case amounts to a judicial alteration of a common law doctrine that was unexpected and indefensible. *See Rogers v. Tennessee,* 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001).

¶ 54 Because I believe the corpus delicti rule has been effectively overruled in this jurisdiction at least since our adoption of the substantial evidence standard in Bennett, and the evidence before the jury in this case clearly meets that standard, I would reverse the court of appeals judgment and order reinstatement of the defendant's convictions. Whether or not the majority creates a new "trustworthiness" exception to the substantial evidence standard solely for confessions by criminal defendants in the future, which I consider to be not only inappropriate but a flagrant departure from the very choice that led to adoption of that standard in the first place, I believe the defendant's case to be governed solely by the substantial evidence standard.

¶ 55 I therefore respectfully dissent.

I am authorized to state that JUSTICE EID joins in this dissent.