NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-2791, 10-2809, 10-2823 and 10-2835
_____

UNITED STATES OF AMERICA

v.

SOLOMON MANAMELA,

Appellant No. 10-2791
_____

UNITED STATES OF AMERICA

v.

MARIAM COULIBALY,

Appellant No. 10-2809
_____

UNITED STATES OF AMERICA

v.

JULIUS JUMA MURRAY,

Appellant No. 10-2823
_____

UNITED STATES OF AMERICA,

v.

MICKAL KAMUVAKA,
a/k/a DR. K

Mickal Kamuvaka,

Appellant No. 10-2835
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 2-09-cr-00294-002, 2-09-cr-00294-006,
2-09-cr-00294-005 and 2-09-cr-00294-001)
District Judge:  Honorable Stewart Dalzell
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 23, 2012

Before:  FISHER and GREENAWAY, JR., *Circuit Judges*, and JONES,[*] *District Judge*.

(Filed: February 9, 2012)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Solomon Manamela, Mariam Coulibaly, Julius Murray, and Mickal Kamuvaka

(collectively, "Appellants") were convicted of wire fraud, in violation of 18 U.S.C.

§ 1343, health care fraud, in violation of 18 U.S.C. § 1347, and conspiracy, in violation

of 18 U.S.C. § 371.  Coulibaly was also convicted of making false statements to federal

agents, in violation of 18 U.S.C. § 1001.  Appellants appeal the District Court's

judgments of conviction and sentence.  For the reasons discussed below, we will affirm.

---

[*]The Honorable John E. Jones, III, District Judge for the United States District Court for the Middle District of Pennsylvania, sitting by designation.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On April 30, 2009, a grand jury in the Eastern District of Pennsylvania returned a 21-count indictment against nine employees of MultiEthnic Behavioral Health, Inc. ("MEBH"). The indictment stemmed from a government investigation regarding a contract between the City of Philadelphia ("the City") and MEBH, pursuant to which MEBH was to provide in-home services to at-risk children under the Services to Children in their Own Homes program ("SCOH"). The Government alleged that MEBH defrauded the City by failing to provide such services, but nevertheless submitting false documentation indicating that it had done so. Eight of the nine defendants, including Appellants, were charged with twelve counts of wire fraud, in violation of 18 U.S.C. § 1343, six counts of health care fraud, in violation of 18 U.S.C. § 1347, and one count of conspiracy to obstruct a matter within the jurisdiction of a federal agency, in violation of 18 U.S.C. § 371.[1] Coulibaly was also charged with making false statements to federal agents, in violation of 18 U.S.C. § 1001.

---

[1] The Commonwealth of Pennsylvania received block grants from the federal government each year as part of the Temporary Assistance to Needy Families program. Some of this money went to Philadelphia's Department of Human Services, which administered the SCOH program.

Under the SCOH program, MEBH was required to monitor the safety of children designated as "at-risk" during face-to-face visits, and to further monitor their medical care, behavioral health and academic performances. The City also required MEBH to make periodic reports to the City's Department of Human Services ("DHS") about the children and their families. In turn, the City made monthly payments to MEBH, based on the number of children to whom MEBH provided services. From July 2000 through December 2006, the City made payments to MEBH totaling $3,650,145 for services allegedly provided to over 500 families.

From October 2005 to September 2006, MEBH was assigned to provide SCOH services to the Kelly/Washington family, including a fourteen-year-old female, D.K. On August 4, 2006, D.K. was found dead in her home. Her death led to an investigation by the City and a subsequent federal investigation by the United States Department of Health and Human Services.

Five of the nine defendants entered guilty pleas prior to trial. Appellants all proceeded to trial. Before trial, Appellants moved to exclude evidence of D.K.'s death, pursuant to Federal Rules of Evidence 403 and 404(b). The District Court denied the motion as to certain death scene and autopsy photographs. At trial, the Government called numerous witnesses, including the co-defendants who pled guilty. The co-defendants testified that MEBH workers did not visit many of the families to which they were assigned, but that MEBH nevertheless represented to the City that such visits had

4

been made. They also described "gap-filling" sessions, in which documents were falsified at the direction of MEBH supervisors. Family members of children who were supposed to receive SCOH services from MEBH also testified to MEBH's failure to conduct required visits. Special Agent William McDonald testified that although Coulibaly initially denied having known about any falsification of documents at MEBH, she later admitted to participating in the creation of false records. However, McDonald testified that when he met with Coulibaly again, she recanted her statement and denied involvement in any falsification efforts.

On March 3, 2010, a jury found Kamuvaka and Manamela guilty on all nineteen counts and found Coulibaly and Murray guilty on all counts except for three of the six counts of health care fraud. Kamuvaka was sentenced to 210 months of imprisonment; Manamela was sentenced to 168 months; Murray was sentenced to 132 months; and Coulibaly was sentenced to 135 months. Appellants filed timely notices of appeal.

## II.

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III.

## A.

Manamela, Coulibaly, and Murray argue that the District Court erred in admitting evidence of the death of D.K. under Federal Rule of Evidence 403 because the probative

5

value of such evidence, which included photographs of the death scene and autopsy photographs, was substantially outweighed by its unfairly prejudicial effect. We disagree. We review the admissibility of evidence under an abuse of discretion standard. *United States v. Christie,* 624 F.3d 558, 567 (3d Cir. 2010). "A district court has broad discretion to determine the admissibility of relevant evidence in response to an objection under Rule 403." *United States v. Balter*, 91 F.3d 427, 442 (3d Cir. 1996) (citation omitted). We must uphold the District Court's decision unless its ruling was "arbitrary or irrational." *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (citation omitted).

We agree with the District Court that evidence of D.K.'s death, including the death scene and autopsy photographs, was "highly and uniquely probative" of the fraud and obstruction charges. Under the SCOH program, MEBH was required to monitor the safety of at-risk children through face-to-face visits. At the time D.K. died, she weighed just forty-two pounds and had large bedsores. Thus, evidence of her physical condition at the time she died was highly probative of MEBH's failure to conduct the required visits. Accordingly, we cannot conclude that it was "arbitrary or irrational" for the District

6

Court to admit testimony and photographs relating to D.K.'s death.[2] *See Universal Rehab. Servs.*, 205 F.3d at 665.

B.

Coulibaly further contends that the District Court erred in admitting (1) summary charts, (2) her statements to investigators, and (3) statements of her co-conspirators. Because Coulibaly did not raise these issues at trial, we review for plain error. *United States v. Williams*, 464 F.3d 443, 445 (3d Cir. 2006).

First, Coulibaly argues that the District Court erred in admitting as an exhibit a chart prepared by Agent McDonald summarizing an MEBH file because the District Court did not also admit the file itself. This argument is meritless. Federal Rule of Evidence 1006 provides that a party may use a summary or chart to prove the content of "voluminous writings." Under Rule 1006, summary evidence is admissible "only if the underlying materials upon which the summary is based are admissible." *United States v. Pelullo*, 964 F.2d 193, 204 (3d Cir. 1992) (citations omitted). However, Rule 1006 does not require that the underlying materials actually be admitted into evidence. Here, the underlying files were admissible, so we reject Coulibaly's argument.

---

[2] Manamela also challenges the admission of this evidence under Federal Rule of Evidence 404(b). However, we agree with the District Court that Rule 404(b) is not applicable because the evidence was "intrinsic" to the charged offense. *See United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010) (explaining that "evidence is intrinsic if it 'directly proves' the charged offense"). Evidence of D.K.'s death directly proved the charged offenses because the services which MEBH was required to provide included face-to-face visits to check on the well-being of the children.

7

Second, Coulibaly argues that the District Court's admission of statements she made to a federal agent violated the *corpus delicti* rule. Under the *corpus delicti* rule, before the government can introduce a defendant's confession, it must introduce "substantial independent evidence which would tend to establish the trustworthiness of the statement." *Opper v. United States*, 348 U.S. 84, 93 (1954). Corroborative evidence will be sufficient if it "supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Id.* Here, the Government introduced Coulibaly's statements through the testimony of Agent McDonald. Prior to Agent McDonald's testimony, several witnesses, including Coulibaly's co-conspirators and family members of children who were supposed to receive services from MEBH, testified regarding the fraudulent activity at MEBH. Coulibaly was identified as having been present for "gap-filling" sessions, in which MEBH workers created false reports in anticipation of DHS audits. This evidence was more than sufficient to satisfy *Opper*'s corroboration rule.

Finally, Coulibaly contends that the District Court erred in admitting statements made by her coconspirators, without first requiring the Government to prove that she participated in the conspiracy.[3] We disagree. A statement "made by [a] party's coconspirator during and in furtherance of [a] conspiracy" is admissible under Federal

---

[3] Coulibaly also argues that her inability to cross-examine her alleged coconspirators violated her rights under the Confrontation Clause. However, in *Crawford v. Washington*, 541 U.S. 36, 56 (2004), the Supreme Court expressly stated that statements made in furtherance of a conspiracy are not testimonial and thus not subject to the Confrontation Clause. Therefore, Coulibaly's argument has no merit.

Rule of Evidence 801(d)(2)(E). Generally, before a district court can admit the statement of an alleged co-conspirator, it must find, by a preponderance of the evidence, that a conspiracy actually existed and that the declarant and the defendant were members of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Here, it was not until the end of the Government's case that the District Court made a specific finding that a conspiracy involving the declarants and Coulibaly existed. Although we have acknowledged the "danger of prejudice . . . inherent in the practice of admitting coconspirator declarations . . . subject to later proof of the requisite conspiracy," *United States v. Cont'l Grp., Inc.*, 603 F.2d 444, 457 (3d Cir. 1979), we have also recognized the order-of-proof problem facing a trial judge in complex cases "where the government is attempting to prove the participation of multiple defendants in a continuing conspiracy," *United States v. Gambino*, 926 F.2d 1355, 1360 (3d Cir. 1991) (citations omitted). Where, as here, "the conspiracy [may become] clearly defined only after the testimony of several witnesses," we will uphold the district court's decision to admit co-conspirator statements subject to a later connection. *See Gambino*, 926 F.2d at 1360-61.

## C.

Coulibaly also challenges the sufficiency of the evidence on all but one of the counts for which she was convicted.[4] "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United*

---

[4] She does not raise a sufficiency of the evidence challenge to her conviction for making false statements to federal agents, in violation of 18 U.S.C. § 1001 (Count 20).

*States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (citation omitted). We must "view the evidence in the light most favorable to the Government" and will "sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt." *United States v. Reyeros*, 537 F.3d 270, 277 (3d Cir. 2008) (citation omitted). We will not weigh the evidence or make determinations regarding witness credibility. *Dent*, 149 F.3d at 187.

Coulibaly first argues that the evidence was insufficient to support her convictions for wire fraud (Counts 1 through 12). We disagree. To prove wire fraud, the Government must establish beyond a reasonable doubt that (1) the defendant knowingly and willfully participated in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) that interstate wire communications were used in furtherance of the scheme. *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001), *abrogated on other grounds* by *United States v. Riley*, 621 F.3d 312 (3d Cir. 2010). The Government presented evidence that Coulibaly admitted to falsifying paperwork to "fill[] in the gaps" in MEBH records and having families sign undated stacks of visitation verification forms. Although Coulibaly later recanted these admissions, the jury was entitled to afford greater credibility to her earlier statements. Additional testimony from co-conspirators and the families of children to whom MEBH was supposed to provide services further demonstrated that Coulibaly knowingly participated in the fraudulent scheme with the specific intent to defraud. As to the final element – use of wire

10

communications – the evidence was sufficient to demonstrate that it was reasonably foreseeable that false billing documents would be submitted to the City. *See United States v. Tiller*, 302 F.3d 98, 103 (3d Cir. 2002) ("[W]here a person is working for a monitoring service . . . it is obvious that the mailing of payment . . . for [such] service is reasonably foreseeable[.]").

Coulibaly's argument that the evidence was insufficient to establish liability for health care fraud (Counts 13 through 15) fails for the same reasons discussed above. The Government established that she engaged in a scheme to create false documentation indicating that MEBH was fulfilling its contractual obligations to provide health care benefits, with the intent to ensure that DHS continued to pay MEBH. *See* 18 U.S.C. § 1347.

Finally, Coulibaly maintains that the evidence was insufficient to support her conviction under 18 U.S.C. § 371 for conspiracy to obstruct a matter within the jurisdiction of a federal agency (Count 19). Again, we disagree. There was substantial evidence that she engaged in a collective effort to falsify documents, often immediately before DHS audits. Agent McDonald testified that Coulibaly admitted to discussing the fraudulent practices with co-workers at MEBH. This evidence was more than sufficient to allow a reasonable jury to conclude that Coulibaly conspired to obstruct the administration of the SCOH program.

D.

Appellants raise various objections to the sentences imposed by the District Court.[5]  We review the District Court's interpretation of the Sentencing Guidelines *de novo*, its findings of fact for clear error, and its application of the Guidelines to those facts for abuse of discretion.  *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009).

1.

Manamela, Coulibaly, and Kamuvaka contend that the District Court erred in applying the vulnerable victim enhancement under U.S.S.G. § 3A1.1(b).  The enhancement may be applied where:  (1) the victim was particularly susceptible to criminal conduct; (2) the defendant knew or should have known about this susceptibility; and (3) this susceptibility facilitated the defendant's commission of the crime (i.e., there is a "nexus between the victim's vulnerability and the crime's ultimate success").  *United States v. Zats*, 298 F.3d 182, 186 (3d Cir. 2002) (citations omitted).

Manamela and Coulibaly argue that the vulnerable victim enhancement was inapplicable here because the City – not the children to whom services were provided under the SCOH program – was the real victim of the fraud.  However, the enhancement is not limited to situations where the vulnerable individual was the direct victim of the

---

[5] We note that Manamela challenges the District Court's application of a two-point enhancement under U.S.S.G. § 3B1.3 for abuse of a position of trust.  However, the District Court denied the Government's motion to apply that enhancement.

defendant's crime. *See United States v. Dullum*, 560 F.3d 133, 139 (3d Cir. 2009).

Rather, a district court "may look to all the conduct underlying an offense, using

[U.S.S.G.] § 1B1.3 as a guide." *United States v. Monostra*, 125 F.3d 183, 189 (3d Cir.

1997). In this case, the District Court did not clearly err in concluding that the children

whom MEBH was obligated to monitor were victims of Appellants' crimes. Central to

the fraudulent scheme was the fabrication of visitation records; MEBH workers did not

visit the at-risk children, as required. D.K.'s death serves as a glaring example of the

effect of MEBH's failure to monitor the well-being of these children.[6]

Kamuvaka also challenges the District Court's application of the vulnerable victim

enhancement on the basis that there is no nexus between the victims' vulnerability and

the crime's ultimate success. We wholeheartedly disagree. The SCOH program was

created specifically for the purpose of providing services to children who were not being

properly cared for, or who were being abused, at home. The same parents or guardians

who were neglecting their children prior to MEBH's involvement agreed to sign undated

visitation forms, regardless of whether the visits had actually occurred. Appellants took

advantage of the fact that no one would follow-up to ensure that the visits had, in fact,

---

[6] Coulibaly also challenges the District Court's application of a two-level enhancement for conduct involving a "conscious or reckless risk of death or serious bodily injury" under U.S.S.G. § 2B1.1(b)(14). This argument is meritless. Coulibaly's own testimony at trial demonstrated that she was aware that children in the SCOH program were "at-risk" and that many suffered from serious health problems. Failure to ensure that such children were being properly cared for clearly involved a "conscious or reckless risk of death or serious bodily injury." *See id.*

13

happened. Thus, for many of the same reasons that the children were deemed at-risk in the first place, they were especially susceptible to criminal conduct.

Manamela and Kamuvaka further allege that by applying the vulnerable victim enhancement to Appellants, and not to the co-defendants who pled guilty before trial, the District Court penalized Appellants for exercising their constitutional right to a jury trial. We note as a threshold matter that the Government explained that its failure to pursue the enhancement in connection with the sentencing of the co-defendants was simply an oversight. Regardless, the District Court specifically identified grounds for distinguishing the pleading co-defendants from Manamela and Kamuvaka, and indicated that its ultimate sentence would have been the same without the enhancement. Accordingly, we reject their argument that the District Court penalized them for exercising their right to a jury trial.

2.

Coulibaly contends that the District Court's loss calculation in her case of $1,044,000 was incorrect. In determining the amount of loss attributable to a defendant's conduct, a district court "need only make a reasonable estimate of the loss" based on the preponderance of the evidence. U.S.S.G. § 2B1.1 cmt. n.3(C). During the relevant time period, the City paid MEBH roughly $3.65 million to provide services under the SCOH program. Based on the record, the District Court estimated that at least one-third of MEBH's required visits never occurred, and thus calculated the total loss amount as

14

$1.216 million. We find that this was a reasonable estimate and therefore the District Court's determination that $1,044,000 of the loss was attributable to Coulibaly's conduct was not clearly erroneous.

3.

Kamuvaka and Murray also claim that their sentences were unreasonable. In determining whether a sentence is reasonable, we conduct a two-part inquiry. We must first ensure that the district court did not commit any "significant procedural error," and assuming we are satisfied that no such error occurred, we then review the substantive reasonableness of the sentence. *United States v. Wise*, 515 F.3d 207, 217-18 (3d Cir. 2008).

Kamuvaka argues that her sentence of 210 months' imprisonment was both procedurally and substantively unreasonable. She bases her procedural unreasonableness argument on the fact that the District Court did not specifically reference each 18 U.S.C. § 3553(a) sentencing factor prior to imposing her sentence. However, where, as here, a district court imposes a within Guidelines sentence, a lengthy explanation is generally not required. *See Rita v. United States*, 551 U.S. 338, 356-57 (2007). It is clear from the record that the District Court was well aware of Kamuvaka's history and characteristics and took them into account. Accordingly, we reject her contention that her sentence was procedurally unreasonable. We similarly reject her argument that the sentence was substantively unreasonable. When the district court imposes a sentence within the

15

Guidelines range, we may presume its reasonableness on appeal. *Id.* at 347. To overcome this presumption, Kamuvaka must demonstrate that "no reasonable sentencing court would have imposed the same sentence on [her] for the reasons the [D]istrict [C]ourt provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009). Kamuvaka has failed to meet this burden. She argues that mitigating factors such as her age, educational background, and lack of a prior criminal record require imposition of a lighter sentence. However, the record reflects that the District Court engaged in a meaningful consideration of the § 3553(a) factors and we find no abuse of discretion in its assessment of the weight to be afforded each factor.

Murray challenges his sentence solely on the basis that it was substantively unreasonable. He asserts that the District Court erred in granting the Government's motion for an upward variance, and increasing his sentence from 87 months, the high end of the Guidelines range, to 132 months. When departing from the Guidelines, a district court must "ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007). Here, we find that the District Court adequately explained that it granted the upward departure because the Guidelines provisions relating to fraud offenses did not capture the degree of harm that resulted from Murray's conduct. The District Court noted that Murray's Guidelines range was driven largely by the amount of loss, but that it was "almost obscene to treat the culpability based on the money involved" where Murray was "intimately involved in

16

ending [D.K.'s life]."  Moreover, the Guidelines expressly contemplate an upward departure in cases such as this.  Section 5K2.1 provides that a court "may increase the sentence above the authorized guideline range" where the offense resulted in death. Accordingly, we reject Murray's contention that an upward departure of forty-five months was unreasonable.

## IV.

For the reasons set forth above, we will affirm the judgments of the District Court.