#27374-a-SLZ
**2015 S.D. 100**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                 Plaintiff and Appellant,

      v.

ALVIN PLASTOW,                       Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBIN J. HOUWMAN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JARED C. TIDEMANN
PAUL S. SWEDLUND
Assistant Attorneys General
Pierre, South Dakota

      and

AARON F. MCGOWAN
Minnehaha County State's Attorney

SARA E. SNOW
Minnehaha County Deputy State's Attorney
Sioux Falls, South Dakota            Attorneys for plaintiff
                                             and appellant.


LYNDSAY E. DEMATTEO
Minnehaha County Public Advocate's Office
Sioux Falls, South Dakota            Attorneys for defendant
                                             and appellee.

* * * *

                                            ARGUED ON
                                            OCTOBER 6, 2015
                                            OPINION FILED **12/23/15**

#27374

ZINTER, Justice

[¶1.]       The State, by way of intermediate appeal, challenges the circuit court's suppression of Alvin Plastow's admission that he raped a three-year old girl. The circuit court suppressed in accordance with our cases holding that a conviction cannot stand on an admission alone: the admission must be corroborated with independent evidence establishing the corpus delicti of the offense.[1]  Many state and federal courts have adopted a more flexible rule. Instead of requiring evidence of the corpus delicti, those courts allow evidence of the admission's trustworthiness to corroborate the admission and establish guilt. For the reasons stated in this opinion, we adopt the trustworthiness standard as an alternative method of corroborating admissions. However, under Supreme Court precedent, we apply this change prospectively. We therefore affirm.

*Facts and Procedural History*

[¶2.]       Alvin Plastow spent fifteen years in prison after pleading guilty to raping a five-year-old African American female (N.H.). After his release from prison, Plastow lived with his girlfriend, Elizabeth Paige (mother of N.H.), Teerra Raglan, and Raglan's three-year-old African American daughter (S.G.). S.G.'s father, Michael Grace, frequently visited the home.

[¶3.]       At some point, Grace observed Plastow stroking S.G.'s face while S.G. was sitting on Plastow's lap. Aware of Plastow's criminal history, Grace became suspicious and later telephoned Plastow, asking him if he had ever inappropriately

---

1.      The corroboration requirement for admissions applies with equal force to confessions. *See State v. Thompson*, 1997 S.D. 15, ¶ 35, 560 N.W.2d 535, 543.

-1-

touched S.G. Plastow admitted to putting his hand down S.G.'s pants, but claimed he did not penetrate her. After the telephone call, Grace asked S.G. where Plastow touched her, she pointed to her genitals, buttocks, and face.

[¶4.] Grace reported these occurrences to the police. During a subsequent investigation, in a police officer's presence, Grace asked S.G. where Plastow had touched her. S.G. pointed to her genitals. At another point, S.G. approached the police officer and grabbed her genitalia, saying: "He touched me down here."

[¶5.] A detective conducted a follow-up interview. During the interview, Plastow admitted that he was attracted to children, especially black females. He also admitted that after getting out of prison, he struggled with thoughts of children. Plastow specifically admitted raping S.G. on two occasions, once when he was helping her in the bathroom and once in a bedroom. Regarding the bathroom incident, Plastow indicated that he attained an erection while placing his index finger in between S.G.'s vaginal lips. He also indicated that he masturbated while thinking of this incident. Regarding the bedroom incident, Plastow indicated that he ran his finger in between S.G.'s vaginal lips, but denied "reaching S.G.'s hole." Plastow also admitted to taking a picture of S.G.'s partially naked body with his cell phone during the bedroom incident. Plastow saved the picture and admitted to masturbating while viewing it. Plastow indicated that the picture would be on his phone.

[¶6.] Grace had previously given Plastow's phone to the police. They searched the phone and found a picture of S.G. in "Dora the Explorer" pajamas with pink polka dots. Another contemporaneously taken picture was of a prepubescent

female's partially naked body from the waist to mid-thigh with her pants pulled down. The visible portions of the pants resembled S.G.'s pink polka dot pajamas.

[¶7.] S.G. gave a statement about these events to a forensic interviewer at Child's Voice, a child advocacy center. S.G. confirmed the inappropriate touching; however, a corresponding physical examination could neither confirm nor refute that a rape occurred.

[¶8.] The State charged Plastow with two counts of first-degree rape and two counts of possession of child pornography. Plastow filed a pre-trial motion to sever the rape and pornography counts. He also moved to suppress his admissions, arguing the State could not present independent corroborating evidence showing the corpus delicti of a rape.

[¶9.] At an evidentiary hearing on the motion to suppress, the State indicated that S.G. would not testify; no representative from Child's Voice would testify; and Grace would not testify. The State indicated that other than the photograph, it had no independent evidence corroborating Plastow's admissions. The circuit court severed the charges and suppressed Plastow's admissions. The court reasoned that the photograph alone did not establish the corpus delicti of rape. The State appeals raising two issues:

> (1) Whether the circuit court relied on an overly strict application of the corpus delicti rule in suppressing Plastow's admissions.

> (2) Whether the corpus delicti rule should be reformed or abandoned in South Dakota.

*Decision*

[¶10.]     The circuit court ruled that *State v. Thompson* controlled and that under *Thompson*, suppression was required because the State could not show the corpus delicti of rape independent of Plastow's admissions.  1997 S.D. 15, ¶ 36, 560 N.W. 2d. 535, 543.  The State argues that the circuit court misapplied the corpus delicti rule because, in conclusion of law 7, it concluded: "The State has not provided and will not present at trial independent evidence, outside of Plastow's admissions, *for each element of the crime* of rape."  (Emphasis added.)  The State asserts that it need not show independent evidence of each element of the crime to admit an admission.  We agree.

[¶11.]     The corpus delicti rule is generally applied in one of two situations: (1) challenges to the admissibility of an admission, or (2) challenges to the sufficiency of the evidence.  *Compare State v. Best*, 89 S.D. 227, 235, 232 N.W.2d 447, 452 (1975) (involving a challenge to the admission of a defendant's statement before proving the corpus delicti), *and State v. Lowther*, 434 N.W.2d 747, 754 (S.D. 1989) (involving a claim that the state failed to set forth sufficient corroborative evidence before it introduced a defendant's admissions), *with State v. Bates*, 76 S.D. 23, 28, 71 N.W.2d 641, 644 (1955) (involving the claim that there was insufficient evidence to justify submission of the case to the jury), *State v. Garza*, 337 N.W.2d 823, 824 (S.D. 1983) (involving the claim that there was insufficient evidence of the corpus delicti to corroborate appellant's confession and sustain the conviction), *and Thompson*, 1997 S.D. 15, ¶ 34, 560 N.W.2d at 542 (stating the "question ultimately is a challenge to the sufficiency of the evidence.").

[¶12.]     This is an admissibility case, and in admissibility cases, the admissibility of an extrajudicial admission is conditioned on its corroboration by evidence independent of the defendant's extrajudicial statements. *Best*, 89 S.D. at 235, 232 N.W.2d at 452. The corroborative evidence need only show the corpus delicti; i.e., evidence establishing "(1) the fact of an injury or loss, and (2) the fact of someone's criminal responsibility for the injury or loss." *Id.* Therefore, under our corpus delicti rule, the admissibility of Plastow's statements was not conditioned on the State's production of independent evidence of each element of the offense charged against Plastow. The State need only have shown that S.G. was raped by someone. The circuit court's conclusion of law 7 incorrectly stated the rule.[2]

[¶13.]     The State further argues that had the circuit court applied the correct rule, it would have admitted Plastow's admissions. The State contends that the independent evidence in this case established a reasonable probability that S.G. was raped. Plastow, however, argues that the State failed to identify sufficient independent evidence that established the corpus delicti of rape. Plastow contends that standing alone, the picture appearing to be S.G.'s genitalia does not raise a reasonable inference that she was raped.

[¶14.]     *Best* sets forth the quantum of evidence required to admit extrajudicial statements. 89 S.D. at 236, 232 N.W.2d at 453.

---

2.     The circuit court's conclusion of law 7 was based on *Thompson*, 1997 S.D. 15, 560 N.W.2d 535. As previously indicated, *Thompson* was a sufficiency of the evidence case. *Id.* ¶ 34, 560 N.W.2d at 542. Because it was a sufficiency of the evidence case, *Thompson* was not only concerned with the corpus delicti, but also the sufficiency of the evidence to support all elements of the offense. *Id.* ¶¶ 36-37, 560 N.W.2d at 543.

> A prima facie showing of the corpus delicti of the crime charged must be made before a defendant's extrajudicial statements, admissions or confessions may be received in evidence (citations omitted). To establish the corpus delicti . . . , it [is] only necessary for the [State] to show a reasonable probability the criminal act of another caused [the crime charged]. The corpus delicti may be established by circumstantial evidence, and by the reasonable inferences to be drawn from such evidence (citations omitted). While slight evidence is sufficient to establish the corpus delicti, it must be proved entirely independent of and without considering the defendant's extrajudicial statements (citations omitted).

*Id.* (quoting *People v. Cantrell*, 504 P.2d 1256, 1260 (Cal. 1973)).[3] In this case, the State indicated that Grace, S.G., and the forensic interviewer would not testify. The State further indicated at the motions hearing that the only evidence it had to corroborate the crime of rape was the photograph that appeared to be S.G., naked from the waist down. We agree with the circuit court that the photograph, standing alone, did not create a reasonable inference that S.G. was raped.[4] Therefore, under our current caselaw, the circuit court properly suppressed Plastow's admissions.

---

3. In sufficiency of the evidence cases, the admission may be considered with the independent evidence. There must be "such extrinsic corroborating or supplemental circumstances as will, when taken in connection with the admissions, establish beyond a reasonable doubt that the crime was in fact committed by someone." *Bates*, 76 S.D. 23, 28, 232 N.W. 2d 641, 644 (1955).

4. The State relies on a number of decisions from other states applying their formulations of the corpus delicti rule. We do not find those cases supportive because in each case, the prosecution introduced admissible evidence that generated a reasonable inference that the crime had occurred. *See People v. Stevens*, 544 N.E.2d 1208, 1218 (Ill. 1989) (inferring that a rape occurred from a statement by the victim that she had been raped along with evidence of her torn underwear); *People v. Bounds*, 662 N.E.2d 1168, 1185 (Ill. 1995) (concluding that sexual assault could reasonably be inferred from evidence of a broom handle with feces found near a victim's half naked body together with evidence that victim's anus was dilated); *People v. Lara*, 983 N.E.2d 959, 974 (Ill. 2013) (using victim testimony and victim's hearsay report to

(continued . . .)

[¶15.] This case highlights the injustice that may arise under our corpus delicti rule. S.G. was only three and one-half years old and unable to testify, she suffered no tangible physical injury, the corroborating witnesses were apparently unavailable at the time of trial, and Plastow did not challenge the voluntariness or truthfulness of his admissions. The State urges us to follow the lead of the Supreme Court and many other states that have adopted a more flexible rule in the interest of contemporary justice: a rule that focuses on the trustworthiness of the admission.

[¶16.] In 1954, the Supreme Court rejected the traditional corpus delicti rule in favor of a "trustworthiness" standard to determine whether admissions were admissible and sufficient to support a conviction in criminal cases. *See Opper v. United States*, 348 U.S. 84, 75 S. Ct. 158, 99 L. Ed. 101 (1954); *Smith v. United States*, 348 U.S. 147, 75 S. Ct. 194, 99 L. Ed. 192 (1954). *Opper* not only considered

---

(. . . continued)

establish the corpus delicti of sexual assault); *People v. Robbins*, 755 P.2d 355 (Cal. 1988) (inferring the crime of lewd conduct with a child based on evidence of defendant's other acts, defendant's diagnosis as a pedophile, witness identification of defendant driving a motorcycle with victim on back, and the absence of clothes on the victim's dead body); *People v. Jones*, 949 P.2d 890, 903 (Cal. 1998) (inferring oral copulation from: bruises on victims thighs, knees, legs, and perineal area; injuries on victim's hands; victim was not wearing underpants, a brassiere, or shoes; results from the sexual assault kit revealing the presence of semen in victim's vagina, on her external genitalia, and in her rectal area; and expert testimony that negative test results were not inconsistent with oral copulation because the mouth's natural rinsing processes eliminates semen.); *In re W.B. II*, 2009 WL 961500 at *11 (Ohio Ct. App.) (inferring rape from child victim testimony). *State v. Shannon*, 2004 WL 637848 at *7 (Ohio Ct. App.) (inferring unlawful sexual contact from victim's testimony); *State v. Clark*, 666 N.E.2d 308, 311 (Ohio Ct. App. 1995) (inferring rape from testimony of four month old's mother that she heard infant screaming before she entered the home to find infant-victim face down on defendant's lap while defendant had an erect penis and defendant apologized to mother and claimed he was seeking help).

"the extent of the corroboration of admissions necessary as a matter of law for a judgment of conviction," it also discussed the different types of evidence courts allow to corroborate an admission. 348 U.S. at 92, 75 S. Ct. at 164. The Court acknowledged that some jurisdictions required corroborative evidence to touch the corpus delicti of the crime charged, while other courts found that "proof of any corroborating circumstances is adequate which goes to fortify the truth of the confession or tends to prove facts embraced in the confession." *Id.* at 91-92. The Court rejected the former corroboration rule; the rule currently applied in South Dakota. *Id.* at 93. The Court held that the better rule is "to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement." *Id.* The independent evidence is sufficient if it "supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Id.* The Court found this is the better rule because the independent evidence serves two purposes: "It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense." *Id.* (citing *Smith*, 348 U.S. 147, 75 S. Ct. 194). In a companion case, the Court elaborated on the application of the trustworthiness rule: "The quantum of corroboration necessary to substantiate the existence of the crime charged" is that "[a]ll elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." *Smith*, 348 U.S. at 156, 75 S. Ct.

at 199. The federal courts of appeal have subsequently applied the *Opper-Smith* trustworthiness rule in cases involving admissibility.[5]

[¶17.] We agree with the many courts that have concluded the corpus delicti rule is outdated and may serve to obstruct justice in certain circumstances. "The corpus delicti rule was first developed more than three hundred years ago in England to prevent the conviction of those who confessed to non-existent crimes as a result of coercion or mental illness." *State v. Goulding*, 2011 S.D. 25, ¶ 13, 799 N.W.2d 412, 417 (quoting David A. Moran, *In Defense of the Corpus Delicti Rule*, 64 Ohio St. L.J. 817, 817 (2003)). Since that time, newly recognized constitutional rights and rules of evidence have provided protections that address the concerns that gave rise to the rule. Thus, many courts and scholars now agree: the corpus delicti rule may have outlived its usefulness.[6] Although the concerns underlying

---

5. *See United States v. Miller*, 874 F.2d 1255, 1279-80 (9th Cir. 1989) (applying *Opper* and finding "sufficient evidence exists here to support the district court's admission of the evidence and to support the denial of the motion for acquittal."); *United States v. Davanzo*, 699 F.2d 1097, 1100-01 (11th Cir. 1983) ("'It is well settled, however, that there need not be corroborative evidence proving every element of the offense before an admission can be received in evidence.' All that is necessary is for 'the government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement.'") (quoting *Opper*, 348 U.S. at 93, 75 S. Ct. at 164); *United States v. Manamela*, 463 F. App'x 127, 132 (3d Cir. 2012) ("Under the *corpus delicti* rule, before the government can introduce a defendant's confession, it must introduce 'substantial independent evidence which would tend to establish the trustworthiness of the statement.'") (quoting *Opper*, 348 U.S. at 93, 75 S. Ct. at 158)).

6. *See Jacinth v. State*, 593 P.2d 263 (Alaska 1979); *People v. LaRosa*, 293 P.3d 567 (Colo. 2013); *State v. Hafford*, 746 A.2d 150 (Conn. 2000); *Harrison v. United States*, 281 A.2d 222 (D.C. 1971); *State v. Yoshida*, 354 P.2d 986 (Haw. 1960); *State v. McGill*, 328 P.3d 554 (Ct. App. Kan. 2014); *State v. Heiges*, 806 N.W.2d 1 (Minn. 2011); *State v. True*, 316 N.W.2d 623 (Neb. 1982); *State v.*

(continued . . .)

the rule remain, the limitations imposed by the traditional rule are no longer necessary to achieve the valid purposes. 1 George E. Dix et al., *McCormick On Evidence* § 145 (Kenneth S. Broun ed., 7th ed. 2013) ("Widespread agreement remains that the need to assure accuracy of convictions remains at least a major basis for the requirement.").

[¶18.] For example, current Fifth and Sixth Amendment jurisprudence provides some protection against coerced and false confessions. Police officers must now read suspects their rights before interrogating them. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). If suspects request an attorney, the police must stop all questioning. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378 (1981). And, confessions are subject to extensive voluntariness inquiries. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 224, 93 S. Ct. 2041, 2046, 36 L. Ed. 2d 854 (1973). Therefore, in light of the

---

(. . . continued)

> *Zysk*, 465 A.2d 480 (N.H. 1983); *State v. Reddish*, 859 A.2d 1173 (N.J. 2004); *State v. Weisser*, 150 P.3d 1043 (Ct. App. N.M. 2006) (adopting a modified trustworthiness standard that requires corroboration demonstrating trustworthiness plus evidence of the harm; if there is no tangible injury, then the corroboration must link the defendant to the crime); *State v. Parker*, 337 S.E.2d 487 (N.C. 1985) (adopting a modified version of the trustworthiness standard requiring strong corroboration of essential facts in the defendant's confession when there is no independent evidence of injury); *Stout v. State*, 693 P.2d 617 (Okla. Crim. App. 1984); *State v. Osborne*, 516 S.E.2d 201 (S.C. 1999); *State v. Bishop*, 431 S.W.3d 22 (Tenn. 2014) (adopting a modified trustworthiness standard that requires corroboration demonstrating trustworthiness plus evidence of the harm; if there is no tangible injury, then the corroboration must link the defendant to the crime); *State v. Mauchley*, 67 P.3d 477 (Utah 2003); *Holt v. State*, 117 N.W.2d 626 (Wis. 1962); *Simmers v. State*, 943 P.2d 1189 (Wyo. 1997); *See* Thomas A. Mullen, *Rule Without Reason: Requiring Independent Proof of the Corpus Delicti As A Condition of Admitting an Extrajudicial Confession*, 27 U.S.F. L. Rev. 385 (1993) (urging abolition of the corpus delicti rule).

development of constitutional protections intended to minimize involuntary and false confessions, the utility of the corpus delicti rule is less apparent. As one prominent treatise stated, the corroboration rule is often an "obstruction to the course of justice." 7 John Henry Wigmore, Evidence § 2070, p.510 (Chadbourn rev. 1978).

[¶19.]        The corpus delicti rule may also unjustly benefit those who perpetrate crimes causing no tangible injury and crimes involving the most vulnerable victims. *See Smith*, 348 U.S. at 154, 75 S. Ct. at 198; *LaRosa*, 293 P.3d at 575. As the Supreme Court explained, the corpus delicti of some crimes, e.g., tax evasion, cannot be isolated from the identity of the perpetrator. *Smith*, 348 U.S. at 154-55, 75 S. Ct. at 198. Thus, the traditional rule can exclude admissions in those cases. In contrast, the corpus delicti in violent crimes is easily isolated, and therefore the government can more readily admit the defendant's admission. *Id.* But a defendant in a tax evasion case should not have a greater protection than a defendant in a homicide prosecution. *See id.* Likewise, the traditional rule operates disproportionately in cases involving crimes against minors and the mentally infirm. *See LaRosa*, 293 P.3d at 575 (stating that the corpus delicti rule does more harm than good when it bars the convictions in cases involving society's "most vulnerable victims, such as infants, young children, and the mentally infirm . . . ."). We therefore agree that the rule may operate to obstruct justice. It is "too rigid in its approach, too narrow in its application, and too capable of working injustice in cases" like this. *See id.*

[¶20.]     The corpus delicti rule is a product of the common law: it is not constitutionally required,[7] it is not required by statute,[8] and it is not required by the rules of evidence. In 1973, we recognized the two methods of corroboration discussed in *Opper*. *See State v. Aschmeller*, 87 S.D. 367, 375, 209 N.W.2d 369, 373 (1973). Neither method was adopted because the corroborative evidence was sufficient under either rule. *Id.* at 375, 209 N.W.2d at 373-74. Two years later, we noted that the traditional formulation requiring evidence of the corpus delicti was the majority rule, and we applied it to an admission. *See Best*, 89 S.D. at 235, 232 N.W.2d at 452. Ever since, we have restated that rule without reconsidering the basis for its continued application. In light of the considerations presented today, we agree that the traditional rule has outlived its usefulness, and we now follow numerous other jurisdictions in adopting a more modern approach. We adopt the trustworthiness rule announced in *Opper* and *Smith*. Thus, in cases where the defense has moved to suppress an admission before it has been admitted into evidence, the court may admit the statement upon the State's showing of "substantial independent evidence which would tend to establish the trustworthiness of the statement." *Opper*, 348 U.S. at 93, 75 S. Ct. at 164. Alternatively, the State may continue to corroborate admissions under the corpus

---

7.     *See* Dix et al., *supra* ¶ 18 (stating "Constitutional considerations, however, most likely do not demand it.").

8.     SDCL 22-16-2 does provide that: "No person may be convicted of murder or manslaughter, or of aiding suicide, unless the death of the person alleged to have been killed, and the fact of the killing by the accused are each established as independent facts beyond a reasonable doubt." The statute does not govern the admissibility of a defendant's admissions.

delicti rule. And in sufficiency of the evidence cases, a defendant may not be convicted unless the defendant's corroborated confession or admission, independent evidence of the crime, or a combination thereof establishes all elements of the crime beyond a reasonable doubt. *See Smith*, 348 U.S. at 156, 75 S. Ct. at 199.

[¶21.]    The remaining question is whether the trustworthiness rule may be applied in Plastow's case. Plastow argues that he did not have "fair warning" of today's change. Therefore, he contends that applying the new corroboration rule in his case would deprive him of due process. The State argues that the Ex Post Facto Clause does not prohibit such procedural changes to "rules of evidence."

[¶22.]    Although the specific protections recognized in the Ex Post Facto Clause are not controlling in retroactive judicial decision-making,[9] the "limitations on *ex post facto* judicial decision making are inherent in the notion of due process." *See Rogers*, 532 U.S. at 456, 121 S. Ct. at 1697. The due process question is whether our common law application of the new trustworthiness rule would violate Plastow's right to "fair warning." *See id.* at 457, 121 S. Ct. at 1698. The "judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is 'unexpected and indefensible by reference to the law which had been expressed

---

9.    The Ex Post Facto Clause "is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government." *Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S. Ct. 1693, 1697, 149 L. Ed. 2d 697 (2001) (quoting *Marks v. United States*, 430 U.S. 188, 191, 97 S. Ct. 990, 992, 51 L. Ed. 2d 260 (1977)) (internal quotation marks omitted). *Rogers* makes clear that the specific protections of the Ex Post Facto Clause are not incorporated "jot-for-jot" into the due process limitations. *Id.* at 459, 121 S. Ct. at 1699.

prior to the conduct in issue.'" *Id.* at 462 (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354, 84 S. Ct. 1697, 1703, 12 L. Ed. 2d 894 (1964)).

[¶23.]      In *Rogers*, the Supreme Court found that the Tennessee Supreme Court's abolition of the common law "year and a day" rule[10] in homicide cases was not "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Id.* The Court concluded that abolition of that rule was not unexpected and indefensible because it was widely viewed as an outdated relic of the common law; medical and other sciences had rendered the rule obsolete; a vast majority of jurisdictions that had recently addressed the rule had abolished it; and, most importantly, at the time of Roger's conduct, the rule had only the "most tenuous foothold" as part of Tennessee's criminal law. *Id.* at 462-64, 121 S. Ct. at 1700-01. Indeed, the rule had not been codified and the rule had never been the basis for a decision in a similar prosecution in Tennessee. *Id.*

[¶24.]      Here, retroactive application of the trustworthiness rule would be unexpected and indefensible by reference to the law that has been expressed in this jurisdiction prior to the conduct in issue. The corpus delicti rule has been consistently applied to admissions by this court since 1975,[11] a consideration the Supreme Court found most important in *Rogers*. *See Rogers*, 532 U.S. at 464, 121 S. Ct. at 1701. Indeed, it was the basis for the reversal of a conviction in *Thompson*.

---

10.    "At common law, the year and a day rule provided that no defendant could be convicted of murder unless his victim had died by the defendant's act within a year and a day of the act." *Rogers*, 532 U.S. at 453, 121 S. Ct. at 1695.

11.    *See Best*, 89 S.D. at 235, 232 N.W.2d at 452; *Lowther*, 434 N.W.2d at 754; *Bates*, 76 S.D. 23, 71 N.W.2d 641; *Garza*, 337 N.W.2d 823; *Thompson*, 1997 S.D. 15, 560 N.W.2d 535.

1997 S.D. 15, ¶ 39, 560 N.W.2d at 544. Additionally, our common-law rule's statutory counterpart remains in effect in homicide cases. *See* SDCL 22-16-2.[12] Therefore, unlike the abrogation of the year and a day rule considered in *Rogers*, adoption of the trustworthiness rule would "mark[] [an] unpredict[ed] departure from prior precedent" in that it is a rule that has been "relied upon as a ground of [many] decision[s] in" this state. 532 U.S. at 467, 121 S. Ct. at 1703.

[¶25.] Moreover, as previously mentioned, although the Ex Post Facto Clause is not applicable in cases involving judicial decision-making, the "limitations on ex post facto judicial decision making are inherent in the notion of due process." *Id.* at 456, 121 S. Ct. at 1697. Therefore, we find helpful a Supreme Court ex post facto case discussing the principle of due process "fair warning." *See Carmell v. Texas*, 529 U.S. 513, 531 n.21, 120 S. Ct. 1620, 1632, 146 L. Ed. 2d 577 (2000) (noting that one of the concerns of the Ex Post Facto Clause is that legislative enactments give "fair warning of their effect").

[¶26.] *Carmell* involved repeal of a statute that is analogous to the corpus delicti rule. Before its repeal, the Texas statutory rule required corroboration of a rape victim's testimony. *See id.* at 516, 120 S. Ct. at 1624. The Supreme Court held that Carmell's convictions on the counts "not corroborated by other evidence" could not be sustained under the Ex Post Facto Clause. *Id.* at 552, 120 S. Ct. at 1643. *Carmell* held that reducing the quantum of corroborating evidence required in a criminal case violated a "fundamental fairness interest, even apart from any claim of reliance or notice, in having the government abide by the rules of law it

---

12. *See supra* note 8.

establishes to govern the circumstances under which it can deprive a person of his or her liberty or life." *Id.* at 533, 120 S. Ct. at 1633. Like *Carmell*, retroactive application of the trustworthiness rule would implicate fundamental fairness because the new rule changes the required corroborating evidence such that Plastow's previously inadmissible admission would now likely be admissible.

[¶27.]     Following *Rogers* and *Carmell*, we conclude that the retroactive application of the trustworthiness rule would violate Plastow's due process right to fair warning. We affirm and remand for further proceedings under the old rule should the availability of corroborating evidence have changed while this case has been on appeal.

[¶28.]     GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.