# United States Court of Appeals

### For the Eighth Circuit

_____

No. 20-2752

_____

Jason Riis; Cody Holcombe; Aaron Henning; Gena Alvarez

*Plaintiff*s

Dirk Sparks

*Plaintiff - Appellant*

Aaron Peters

*Plaintiff*

v.

Matthew Shaver, in his personal capacity; The City of Pierre

*Defendants - Appellees*

The City of Sisseton; Adam Woxland, former South Dakota Highway Patrol Trooper, in his official and individual capacities; Corporal Korey Ware, with the Sisseton Police Department, in his official and individual capacities; Mark Weibrecht, former South Dakota Highway Patrolman, in his official and individual capacities; The City of Wagner; The City of Wagner Police Department; Officer Desarae Gravatt, City of Wagner Police Officer; Officer Brian McQuire, City of Wagner Police Officer; Law Enforcement Officers James Does, One through Six

*Defendant*s

_____

Appeal from United States District Court
for the District of South Dakota - Central

_____

Submitted: May 12, 2021
Filed: July 23, 2021

_____

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.

_____

SMITH, Chief Judge.

During criminal proceedings in a South Dakota trial court, Dirk Sparks moved to suppress certain evidence as being obtained in violation of the Fourth Amendment. The trial court denied Sparks's motion. Sparks then pleaded nolo contendere and did not appeal the suppression ruling. Later, Sparks sued the City of Pierre, South Dakota, and one of its police officers, Matthew Shaver, under 42 U.S.C. § 1983 in federal district court.[1] Sparks alleged that his Fourth Amendment rights were violated. The district court held that Sparks was collaterally estopped from relitigating his claim because he had already litigated the Fourth Amendment issue before the South Dakota trial court in the criminal proceedings against him. We affirm.

I. *Background*

In 2016, the Pierre Police Department received a call reporting a domestic disturbance at a local residence. Shaver responded to the call. When he arrived at the house, Sparks's girlfriend asked Shaver to remove Sparks from her home. Pursuant to the request, Shaver began speaking with Sparks inside the house and eventually

_____

[1]The Honorable Roberto A. Lange, Chief Judge, United States District Court for the District of South Dakota.

asked Sparks to step outside because of safety concerns. Instead of complying, Sparks darted into the basement.

Shaver followed Sparks downstairs. Near where Sparks had fled, Shaver noticed marijuana and drug paraphernalia, among other items. Sparks's girlfriend also told Shaver that Sparks was coming down from a methamphetamine high. Shaver arrested Sparks for ingesting a controlled substance.

Once Shaver and Sparks arrived at the jail, Shaver asked Sparks for a voluntary urine sample. Sparks refused. Shaver then obtained a search warrant for Sparks's blood and urine. With search warrant in hand, Shaver asked Sparks a second time to provide a voluntary urine sample. Sparks refused again. Shaver then informed Sparks that Sparks would be catheterized if he refused to comply. Sparks continued to adamantly refuse. True to his statement, Shaver took Sparks to a local hospital for the procedure, which was conducted by hospital personnel. The urine sample obtained by the forced catheterization tested positive for amphetamine, methamphetamine, and THC.

Sparks was then charged and indicted under South Dakota law for ingesting a controlled substance. During the proceedings against him, Sparks moved to suppress the evidence produced via forced catheterization, arguing that it was obtained in violation of the reasonableness and particularity requirements of the Fourth Amendment of the United States Constitution. At the suppression hearing on Sparks's motion, the state trial court orally denied the motion. No written order was entered.

Afterward, Sparks pleaded nolo contendere to the charge against him. The state trial court entered a final judgment in the criminal case. Sparks did not appeal his conviction or the state trial court's suppression ruling.[2]

After the criminal proceedings concluded, Sparks filed this § 1983 action against Shaver and the City of Pierre. The defendants moved for summary judgment, arguing that Sparks was collaterally estopped from relitigating the constitutionality of the warrant and search. The district court agreed and granted summary judgment in the defendants' favor. Sparks appeals the district court's collateral-estoppel determination.

## II. *Discussion*

We review a district court's collateral-estoppel determination de novo. *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1022 (8th Cir. 2019). And we apply the collateral-estoppel doctrine of South Dakota, the state that issued the potentially preclusive judgment. *Life Invs. Ins. Co. of Am. v. Corrado*, 804 F.3d 908, 913 (8th Cir. 2015).

Collateral estoppel "bars relitigation of an essential fact or issue involved in the earlier suit." *Hamilton v. Sommers*, 855 N.W.2d 855, 866 (S.D. 2014) (cleaned up). But the fact or issue must have been "actually and directly in issue in a former action and . . . judicially passed upon and determined by a domestic court of competent jurisdiction." *Hayes v. Rosenbaum Signs & Outdoors Advert., Inc.*, 853 N.W.2d 878, 882 (S.D. 2014) (emphasis omitted) (quoting *Link v. L.S.I., Inc.*, 793 N.W.2d 44, 54 (S.D. 2010)). For collateral estoppel to apply, the following four-part test must be met:

---

[2]Sparks could not have appealed the suppression issue after pleading nolo contendere. *See State v. Rondell*, 791 N.W.2d 641, 644 (S.D. 2010). But, under South Dakota law, he could have pleaded not guilty, stipulated to the facts, and preserved his right to appeal. *See id.* at 644 n.3. He did not.

(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Did the party against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication?

*Hamilton*, 855 N.W.2d at 866 (quoting *Estes v. Millea*, 464 N.W.2d 616, 618 (S.D. 1990)). Sparks challenges only the second element—whether there was a final judgment on the merits.

According to Sparks, there was no final judgment on the merits for collateral-estoppel purposes because the state trial court's oral suppression ruling did not meet certain requirements in South Dakota Codified Laws § 15-6-58. Section 15-6-58 provides, "A judgment or an order becomes complete and effective when reduced to writing, signed by the court or judge, attested by the clerk and filed in the clerk's office."

Sparks's reliance on § 15-6-58 is misplaced because that statute applies only to civil actions. S.D. Codified Laws § 15-6-1. The state trial court's suppression ruling, however, came during a criminal proceeding. Those proceedings are governed by different rules. *Id.* § 23A-1-1. This likely explains why Sparks cites no case where South Dakota has applied § 15-6-58 in a criminal matter; we have not found one either. We conclude § 15-6-58 is inapplicable and thus provides Sparks's argument no help.

But a similar principle exists in South Dakota criminal law, though it is not codified. In *State v. Lowther*, Lowther was indicted on multiple counts of first-degree arson. 434 N.W.2d 747, 750 (S.D. 1989), *abrogated on other grounds by State v. Plastow*, 873 N.W.2d 222 (S.D. 2015). During the proceedings, Lowther moved to suppress evidence, and the state trial court orally granted his motion. *Id.* The state

-5-

trial court did not enter a written order because, at the end of the hearing, it dismissed the indictment against Lowther without prejudice. *Id.* Then, South Dakota indicted Lowther again, this time on second-degree arson. *Id.* Lowther again moved to suppress the evidence. *Id.* This time, however, the state trial court only partially granted the motion. *Id.* Lowther appealed, contending that the state trial court was barred by res judicata from making a different ruling at the second suppression hearing. *Id.* at 752 n.7. The South Dakota Supreme Court held that res judicata played no role and that the state trial court was free to make a new ruling on the same evidence. *Id.* at 752. The supreme court explained that "no final order was reduced to writing, signed or duly recorded by filing." *Id.* Thus, "the trial court [could have] change[d] its ruling," so the oral ruling did not need to "be considered at [the second suppression hearing]." *Id.*

Although *Lowther* has some similarities to Sparks's case, it does not persuade us that South Dakota courts would rule in Sparks's favor. The distinguishing fact is this: In the criminal case against Sparks, he was convicted and final judgment was entered, while in *Lowther*, the original case was dismissed without prejudice. This distinction is "[c]ritical" to determining whether collateral estoppel applies. *Hayes*, 853 N.W.2d at 882. A dismissal without prejudice leaves "the parties . . . free to litigate as though the action never commenced." *Id.* In *Lowther*, there was neither a written order addressing the motion to suppress nor a final judgment that ended the criminal proceedings on the merits, so the State was free to proceed against Lowther as though the suppression ruling had never occurred. But in Sparks's criminal case, there was a final judgment.

Sparks pleaded nolo contendere, which resulted in a conviction and led to the state trial court entering final judgment in the criminal case against him. *See Monette v. Weber*, 771 N.W.2d 920, 922 (S.D. 2009) (stating "that a plea of no contest still count[s] as a conviction and [is] subject to the maximum possible penalty"); S.D. Codified Laws § 23A-7-2 (implying that a court should enter judgment after a plea

of nolo contendere). This "end[ed] the [criminal proceedings] . . . , leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." *In re Est. of Geier*, 809 N.W.2d 355, 359 (S.D. 2012) (quoting *Scott v. Scott*, 136 P.3d 892, 895 (Colo. 2006)); *see also Bank of Hoven v. Rausch*, 449 N.W.2d 263, 265 (S.D. 1989) (explaining that there was a final judgment when "[t]here was nothing left for the trial court to decide"); *cf.* S.D. Codified Laws § 15-6-54(a) (defining "[j]udgment" in civil cases as "the final determination of the rights of the parties in an action or proceeding").[3]

When the state trial court entered final judgment against Sparks, its "inherent power to reconsider and modify [the] order" ended. *Moore v. Michelin Tire Co.*, 603 N.W.2d 513, 525 (S.D. 1999). Thus, it could no longer have "change[d] its ruling." *Lowther*, 434 N.W.2d at 752. The cement of the state trial court's suppression ruling has dried. Only a direct appeal could have altered its finality, but that ship has sailed. Thus, the ruling is "sufficiently firm to be accorded conclusive effect." *Rausch*, 449 N.W.2d at 265 (quoting Restatement (Second) Judgments § 13 (1982)); *cf. Estes*, 464 N.W.2d at 619 n.3 (explaining that when a suit has been "taken to a final judgment," there is "an appropriate basis for the application of collateral estoppel"). There was therefore a final judgment on the merits for the purposes of collateral estoppel.

---

[3]Sparks argues that by pleading nolo contendere he "did not, as a matter of law, admit that his forcible catheterization was legal." Appellant's Br. at 12 (citing *Haring v. Prosise*, 462 U.S. 306 (1983)). Although it is true that he has not "admit[ted]" or agreed with the legality of the forced catheterization, his plea does not undermine the collateral-estoppel effect of the state trial court's ruling. We have explained that when an "[a]ppellant fully litigated his [F]ourth [A]mendment claims in the state trial court," he may be precluded from raising the same issue in a federal § 1983 action. *Sanders v. Frisby*, 736 F.2d 1230, 1232 (8th Cir. 1984) (per curiam). During Sparks's suppression hearing, he fully litigated the issues he raises in this case.

### III. *Conclusion*

Accordingly, we affirm.

_____